**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PAUL A. FIORAVANTI, JR.
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: November 9, 2023
Date Decided: January 16, 2024

C. Barr Flinn, Esquire
M. Paige Valeski, Esquire
Young Conaway Stargatt
& Taylor, LLP
1000 North King Street
Wilmington, DE 19801

A. Thompson Bayliss, Esquire
Eric A. Veres, Esquire
Michael T. Manuel, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Peter J. Walsh, Jr., Esquire
Michael A. Pittenger, Esquire
Justin T. Hymes, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street, 6th Floor
Wilmington, DE 19801

> RE: *Icahn Partners LP et al. v. Francis deSouza et al.*,
> C.A. No. 2023-1045-PAF

Dear Counsel:

This letter opinion resolves the motion to strike portions of the complaint. Defendants seek to strike the allegations that were derived from privileged or confidential board-level communications and delivered to the Plaintiffs by a director of Nominal Defendant Illumina, Inc. ("Illumina" or the "Company"). For the reasons discussed herein, the motion is granted.

## I. BACKGROUND[1]

Illumina is a life sciences company that develops tools and systems for genetic analysis.[2] In 2015, it formed a subsidiary named GRAIL, Inc. ("GRAIL") to develop a blood-based cancer-detection test utilizing Illumina's main-line DNA sequencing technology.[3] Illumina chose to reduce its ownership stake in GRAIL to less than 20% in a February 2017 spin-off, stating publicly that doing so would encourage investment in GRAIL and comparable technologies.[4] Over the next three years, GRAIL raised $1.9 billion dollars through private financing options and went public on September 9, 2020.[5] On September 20, 2020, 11 days after GRAIL's initial public offering, Illumina announced that it had agreed to reacquire its former subsidiary for $8 billion.[6]

---

[1] The recitation of facts is drawn from the verified complaint, the documents integral thereto, the briefing on this motion, and information subject to judicial notice. The court has taken care to avoid disclosure of the specific information that is the subject of this motion. Citations to the docket in this action are in the form of "Dkt. [#]." In citations, the complaint in this action, Dkt. 1, will be cited as "Compl." After being identified initially, individuals are referenced herein by their surnames without regard to formal titles such as "Dr." No disrespect is intended.

[2] Compl. ¶ 35.

[3] *Id.* ¶¶ 35–36.

[4] *Id.* ¶ 38.

[5] *Id.* ¶ 39.

[6] *Id.* ¶ 40.

The proposed merger drew scrutiny from regulators in the United States and the European Union.[7]  On March 30, 2021, the United States Federal Trade Commission (the "FTC") filed an administrative complaint seeking to block the merger and authorized a federal suit to obtain an injunction to prevent the deal from closing prior to the resolution of the administrative trial.[8]  The European Union's European Commission ("EC") formally initiated its own investigation on April 19, 2021, triggering an automatic standstill under the EU Merger Regulation.[9]  The FTC dismissed its federal complaint seeking injunctive relief without prejudice to its ability to renew its claim if the standstill under EU regulations were lifted but maintained the administrative proceeding.[10]  Notwithstanding the standstill and pending regulatory review in the US and EU, Illumina closed the acquisition on August 18, 2021.[11]  In response, the EC ordered Illumina to keep the companies separate and not to share confidential information, but required Illumina to fully fund GRAIL while the EC's review was ongoing.[12]  On September 6, 2022, the EC issued

---

[7] *Id.* ¶ 42.

[8] *Id.* ¶¶ 42–43.

[9] *Id.*

[10] *Id.* ¶ 43.

[11] *Id.* ¶ 63.

[12] *Id.* ¶ 67.

a final ruling prohibiting Illumina from acquiring GRAIL and ordered Illumina to divest GRAIL.[13] On March 31, 2023, the FTC also ordered Illumina to divest GRAIL.[14] On July 12, 2023, the EC levied a €432 million fine (equivalent to $476 million at the time of the complaint) against Illumina for violating the standstill.[15]

On February 13, 2023, Plaintiffs Icahn Partners LP, Icahn Partners Master Fund LP, and Matsumura Fishworks LLC became stockholders of Illumina.[16] All three Plaintiffs are controlled by Carl Icahn.[17] On April 27, 2023, the Plaintiffs, which collectively owned approximately 1.4% of Illumina's outstanding common stock,[18] proposed a three-candidate slate to challenge the Company's nominees at the 2023 annual meeting of stockholders.[19] One of the Plaintiffs' nominees, Andrew

---

[13] *Id.* ¶¶ 68–69.

[14] *Id.* ¶ 70.

[15] *See id.* ¶ 6; Illumina, Inc., Quarterly Report (Form 10-Q) (Nov. 13, 2023) at 26. "The court may take judicial notice of facts publicly available in filings with the SEC." *Omnicare, Inc. v. NCS Healthcare, Inc.*, 809 A.2d 1163, 1167 n.3 (Del. Ch. 2002) (citing *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69–70 (Del. 1995)); *accord In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006) ("The trial court may also take judicial notice of matters that are not subject to reasonable dispute.").

[16] Illumina's Opening Br. 4.

[17] *Id.* at 6–7.

[18] *Id.* Ex. B at 2; Compl. ¶ 14.

[19] Illumina's Opening Br. 6.

Teno, is an employee of Icahn Capital LP, which is also controlled by Icahn.[20] At the May 25, 2023, annual meeting, Illumina's stockholders elected Teno to the Company's Board of Directors (the "Board").[21] Plaintiffs' other two nominees were not elected.[22]

About one week before the election, the Plaintiffs delivered a demand to inspect books and records under 8 *Del. C.* § 220 to Illumina, requesting information about the GRAIL transaction, among other matters.[23] On May 18, 2023, the Company agreed to produce certain non-privileged documents, conditioned upon the demanding stockholders' entering into a confidentiality agreement.[24] The Plaintiffs have not responded to the Company's offer.[25]

In connection with his joining the Board, Teno agreed to abide by the Company's Code of Conduct, which provides, among other things, that, "[e]xcept as required for the proper performance of your duties, you may not use or give to

---

[20] *Id.* at 6–7.

[21] *Id.* at 7.

[22] *Id.*

[23] *Id.*; *id.* Ex. D.

[24] *Id.* at 7.

[25] *Id.*

others trade secrets or confidential information of the Company."[26]  After being seated on the Board, Teno received privileged and confidential Company information, including information that predated his tenure on the Board.[27]  Teno subsequently provided privileged and confidential information to Icahn and his affiliates.[28]  Using this information, Plaintiffs drafted their complaint in this action, bringing direct and derivative claims alleging that Francis deSouza, John W. Thompson, Frances Arnold, Caroline Dorsa, Robert Epstein, Scott Gottlieb, Gary Guthart, Philip Schiller, and Susan Siegel (the "Individual Defendants") breached their fiduciary duties.[29]

Plaintiffs filed their complaint on October 17, 2023, as a confidential filing under Court of Chancery Rule 5.1.[30]  It is undisputed that the complaint contains information from Illumina that is protected by the attorney-client privilege.[31]

---

[26] Pls.' Opp'n Br. 32 (internal quotation marks omitted).

[27] Illumina's Opening Br. 8.

[28] *Id.*; Pls.' Opp'n Br. 5.

[29] Illumina's Opening Br. 9; Compl. ¶¶ 109–28.  Shortly after the filing of Plaintiffs' complaint, two other stockholder groups entered appearances in this action and informed the court that they have served demands upon the Company to inspect books and records relating to the same claims asserted in this action.  *See* Dkts. 17–18, 20–21.  As of the publishing of this letter ruling, neither stockholder group has filed a plenary complaint.

[30] Dkt. 1.

[31] Illumina's Opening Br. 2 n.2 ("The Complaint contains information privileged by both the attorney-client privilege and attorney work product doctrine."); Pls.' Opp'n Br. 3

On November 1, 2023, the Company filed a motion to strike paragraphs of the complaint that contain privileged and confidential information that Teno obtained after joining the Board and supplied to the Plaintiffs (the "Challenged Information").[32]  The Individual Defendants have joined in that motion.[33]  The parties fully briefed the motion to strike, and the court has concluded that the motion can be resolved on the papers.

## II.   ANALYSIS

### A.   Directors Have Extremely Broad Access to Corporate Information

There is no dispute that Teno, as a director of the Company, possessed broad rights to information about Illumina. *See In re Aerojet Rocketdyne Hldgs., Inc.*, 2022 WL 1446782, at *3 (Del. Ch. May 5, 2022) ("A director's right to information is essentially unfettered in nature and includes equal access to board information.") (internal quotation marks omitted); *In re Info. Mgmt. Servs., Inc. Deriv. Litig.*, 81 A.3d 278, 290 (Del. Ch. 2013) ("[B]ecause of their statutory obligation to manage the business and affairs of the corporation and the concomitant fiduciary duties they

---

[32] Dkt. 25.

[33] Individual Defs.' Opening Br.  All of the Defendants filed a motion to dismiss the same day.  Dkt. 26.

(stating that "[a]ll the Company's confidential or privileged information has been filed under seal with the Court consistent with Court of Chancery Rule 5.1").

owe to the corporation and its stockholders, individual directors have informational rights that are essentially unfettered in nature.") (internal quotation marks omitted); *Henshaw v. Am. Cement Corp.*, 252 A.2d 125, 128 (Del. Ch. 1969) (observing that a director's right to inspect books and records "is correlative with his duty to protect and preserve the corporation"). Teno's right to Company information also extends to privileged material. *Kalisman v. Friedman*, 2013 WL 1668205, at *4 (Del. Ch. Apr. 17, 2013); *see Moore Bus. Forms, Inc. v. Cordant Hldgs. Corp.*, 1996 WL 307444, at *4 (Del. Ch. June 4, 1996) ("[A]s a general matter, a corporation cannot assert the privilege to deny a director access to legal advice furnished to the board during the director's tenure."); *Kirby v. Kirby*, 1987 WL 14862, at *7 (Del. Ch. July 29, 1987) ("The directors are all responsible for the proper management of the corporation, and it seems consistent with their joint obligations that they be treated as the 'joint client' when legal advice is rendered to the corporation through one of its officers or directors."); *cf. SBC Interactive, Inc. v. Corp. Media P'rs*, 1997 WL 770715, at *6 (Del. Ch. Dec. 9, 1997) ("Where, however, a director's interests come into conflict with the interests of the corporation on a given issue, [the board may exclude that director from the privilege], so long as the board employs appropriate governance procedures."). Directors may also be entitled to access legal advice provided to the board before their tenure if they have a present need for that

information to perform their fiduciary duties. *See Intrieri v. Avatex Corp.*, 1998 WL 326608, at \*2 (Del. Ch. June 12, 1998) (declining to recognize a broad rule allowing a corporation to withhold privileged documents created before an individual becomes a director, because it "would have the potential to hinder a director's ability to perform his fiduciary duties"); *cf. SerVaas v. Ford Smart Mobility LLC*, 2021 WL 5226487, at \*5 (Del. Ch. Nov. 9, 2021) (denying access to privileged information that predated the plaintiffs' tenure on the board where they sought the information in furtherance of personal litigation).

Thus, as a general rule, directors are entitled to privileged communications delivered to the corporation or the board. As this court recently observed:

> The rationale for this rule is that "all directors are responsible for the proper management of the corporation, and thus, should be treated as a 'joint client'—'not in his or her individual capacity, but as a member of the collective body'—when legal advice is rendered to the corporation through one of its officers or directors."

*Hyde Park Venture P'rs Fund III, L.P. v. FairXchange, LLC*, 292 A.3d 178, 188 (Del. Ch. 2023) (quoting 1 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 7.02[d], at 7-46 (2d ed. 2021)).

This court recognizes three exceptions to a director's broad access to privileged information:

> First, the director's right can be diminished by an *ex ante* agreement among the contracting parties . . .

> Second, a board can act pursuant to 8 *Del. C.* § 141(c) and openly with the knowledge of the excluded director to appoint a special committee. A committee would be free to retain separate legal counsel, and its communications with that counsel would be properly protected, at least to the extent necessary for the committee's ongoing work, such as conducting a special committee investigation or negotiating an interested transaction . . .

> Third, a board or a committee can withhold privileged information once sufficient adversity exists between the director and the corporation such that the director could no longer have a reasonable expectation that he was a client of the board's counsel.

*In re CBS Corp. Litig.*, 2018 WL 3414163, at *4–5 (Del. Ch. July 13, 2018) (quoting

*Kalisman*, 2013 WL 1668205, at *4–5) (alterations in original).

The motion before the court does not involve a dispute over Teno's

entitlement to Illumina information that is protected by the attorney-client privilege.

The issue is whether Teno is permitted to share that privileged information with the

Plaintiffs and whether Plaintiffs may disclose that confidential information in a civil

complaint against the Company's directors. As to that issue, this court has not

developed a bright-line rule. *See* J. Travis Laster & John Mark Zeberkiewicz, *The*

*Rights and Duties of Blockholder Directors*, 70 Bus. Law. 33, 41 (2015) ("Laster &

Zeberkiewicz") ("Less clear, however, is what a particular director can do with the

information, such as whether the director can share it with the stockholder he

represents."); Catherine G. Dearlove & Jennifer J. Veet Barrett, *What to Do About Informational Conflicts Involving Designated Directors*, 57 Prac. Law. 45, 48 (2011) ("[T]he boundaries of where a director's disclosure of confidential corporate information crosses from permissible disclosure to a breach of fiduciary duty are far from clear . . . .").

## B.    Plaintiffs Are Not Within the Circle of Confidentiality

As a threshold matter, Plaintiffs do not argue that they are entitled to Illumina's privileged information on the grounds that attorney-client privilege had been waived—either by Defendants' having disclosed the privileged communications to Teno or Teno's having shared the communications with Plaintiffs.[34] Rather, Plaintiffs contend that they were within the scope of the privilege all along because Teno is their board nominee and he is employed by a different Icahn-controlled entity. Plaintiffs argue that they were joint clients with respect to the privileged information shared with Teno and, therefore, had the same

---

[34] Pls.' Opp'n Br. 32–35; *see Tenneco Auto. Inc. v. El Paso Corp.*, 2001 WL 1456487, at *2 (Del. Ch. Nov. 7, 2001) (holding that a party in a community of interest "cannot waive the attorney-client privilege on its own"); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 379–80 (3d Cir. 2007), *as amended* (Oct. 12, 2007) ("[O]ne party to a joint representation . . . may [not] unilaterally waive the privilege."); *SerVaas*, 2021 WL 5226487, at *3 ("The privilege exists for the benefit of the corporation—not for any particular corporate constituency (such as an individual director).").

right to the information as Teno.[35]  Specifically, Plaintiffs assert that their nomination of Teno and the public disclosure of his employment at an Icahn entity would render unreasonable any expectation that Teno would not share confidential and privileged information that he acquired as a director with Plaintiffs.  Plaintiffs pin their right to Illumina's privileged communications to a string of cases holding that a corporate director who has been designated by a stockholder may share confidential corporate communications, including privileged information, with the designating stockholder.  Defendants argue that the Plaintiffs are trying to stretch the underlying doctrine of those cases too far.

As explained last year in *Hyde Park*, this court has held in a long line of cases dating back to 1992 that a director may share a corporation's privileged communications with the director's designating stockholder under certain limited circumstances.  *See* 292 A.3d at 188–96.  Generally, those circumstances exist when (1) a stockholder has the right to designate a director, either by contract or through

---

[35] This is not a case in which the director claims a need to share information with agents in order to assist the director in performing a review of the documents.  *Cf. Henshaw*, 252 A.2d at 130 ("Unquestionably a director is entitled to assistance in his examination of corporate records."); *Kortum v. Webasto Sunroofs, Inc.*, 769 A.2d 113, 120 (Del. Ch. 2000) (observing that "restrictions on [the director's] choice of agents to assist him in the inspection [of books and records under DGCL § 220(d)] might be justified if the proposed agents have interests in conflict with [the corporation]").

its voting power; or (2) the director serves as a controller or fiduciary of the stockholder. The Defendants argue that neither of these circumstances exists here and, therefore, Teno could not share Illumina's privileged information with the Plaintiffs. A brief recap of the key precedents is helpful to set the stage.

The court first confronted this issue in *AOC Limited Partnership v. Horsham Corp.*, 1992 WL 97220 (Del. Ch. May 5, 1992). The case involved a dispute concerning Clark Oil & Refining Corp. ("Clark Oil"), a wholly owned subsidiary of AOC Holdings, Inc. ("AOC Holdings"). AOC Holdings, in turn, was owned by two entities: Horsham Corp. ("Horsham") and AOC Limited Partnership ("AOC Fund"). Two individuals (Paul A. Novelly and Samuel R. Goldstein) indirectly owned 100% of AOC Fund and served on the Clark Oil board along with Horsham's controlling stockholder and two other unaffiliated individuals. AOC Fund filed litigation to enforce a stockholders' agreement with Horsham and asserted breach of fiduciary duty claims against Horsham and the three directors not affiliated with the AOC Fund. In resolving a discovery dispute, then-Vice Chancellor Chandler held that AOC Fund was entitled to discovery of purportedly privileged communications provided to Clark Oil. The court reasoned that the AOC Fund "in effect, is a member of Clark Oil's board since its two constituents are members of its board." *Id.* at \*1. In analyzing the opinion last year, Vice Chancellor Laster observed:

> Because Novelly and Goldstein managed the AOC Fund, they necessarily shared information with the fund as human beings who could not partition their brains. Clark Oil therefore had no expectation of confidentiality as to the AOC Fund either, and the defendants could not invoke the attorney-client privilege to withhold advice provided to the Clark Oil board.

*Hyde Park*, 292 A.3d at 190.

In *Moore Business Forms*, the stockholder plaintiff ("Moore") acquired preferred stock of Cordant Holdings Corporation ("Holdings") and entered into a stockholders' agreement that enabled it to appoint a director to the Holdings board and to the board of its wholly owned subsidiary Cordant, Inc. ("Cordant"). 1996 WL 307444. After Moore declined an offer by Holdings to purchase its shares, Holdings and the board excluded Moore's designee from board meetings at which the repurchase was discussed. Moore commenced litigation and later moved to compel information that the other directors had received to the exclusion of Moore's designee. In resolving the discovery dispute, Justice Jacobs, then a Vice Chancellor, held that Moore was entitled "by virtue of the Stockholders' Agreement" to all of the information that its director designee could have received, and that "no basis exists to assert the privilege against [the designee] or, by extension, against Moore." *Id.* at *4, *6. As later explained in *Hyde Park*:

> The outcome in *Moore Business Forms* [turned] on the fact that Moore could appoint a designee and was presumed to share information with

> its designee, just as the AOC Fund and its representatives on the Clark Oil board were presumed to share information. That in turn meant that Holdings had no expectation of confidentiality as to Moore and could not assert the attorney-client privilege.

292 A.3d at 192.

*KLM v. Checchi* involved a motion to compel Northwest Airlines, its directors, and its officers to produce information related to board and officer discussions to KLM, "a substantial minority shareholder with a contractual right to designate certain directors." 1997 WL 525861, at *1 (Del. Ch. July 23, 1997). Specifically, KLM sought information about Northwest's adoption of a stockholders' rights plan in response to KLM's threat to bring litigation to enforce certain contractual rights. Most of the information KLM sought had been conveyed at a board meeting to which KLM's director designees were not given notice. The court granted KLM's motion to compel because "the clandestine meeting of November 15, 1995 was held without notice to KLM" or its directors and "[i]t is far from clear, despite defendant's argument to the contrary, that KLM should or would have been recused from general discussions about the adoption of a shareholders' rights plan" despite its then-outstanding "threat to enforce contractual rights." *Id.*[36]

---

[36] *KLM* was decided on a highly expedited basis, and the court granted the motion in part because the plaintiff established good cause under two earlier decisions of this court that followed *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970). *See KLM*, 1997 WL 525861, at *1–2 (citing *Carlton Invs. v. TLC Beatrice Int'l Hldgs., Inc.*, 1996 WL 132983

In *Kortum*, a stockholder and its director designee filed a books and records action against Webasto Sunroofs, Inc. ("WSI"). 769 A.2d 113. The stockholder, Webasto AG Fahrzeugtechnik ("WAG"), owned 50% of the equity of WSI, possessed the right to designate a director to the WSI board, and chose its chief executive officer as its director designee. The *Kortum* court held that it was not reasonable "to condition Kortüm's inspection upon an undertaking not to disclose to WAG any information gleaned from the document inspection" because, "[a]bsent a conflict between [Kortüm's role as a fiduciary of both WSI and WAG], Kortüm's fiduciary duty would require him to disclose that information to WAG." *Id.* at 121. Finding no such conflict, the *Kortum* court granted Kortüm mostly unrestricted informational access and gave WAG the same access as Kortüm. *Id.* at 121, 125.

In *Kalisman*, Jason Kalisman, a director of Morgans Hotel Group Co. ("Morgans"), and the co-founder of OTK Associates, LLC ("OTK"), which owned 13.9% of Morgans' outstanding stock, brought suit against the other directors of Morgans, challenging, among other things, a proposed recapitalization. 2013 WL 1668205. OTK later joined as a plaintiff. Kalisman sought discovery of privileged

---

(Del. Ch. Mar. 15, 1996), and *Lee v. Engle*, 1995 WL 761222 (Del. Ch. Dec. 15, 1995)). In addition, the court noted that it was not allowing discovery into board discussions about litigation with KLM. *KLM*, 1997 WL 525861, at *2.

material, which the defendants opposed. After surveying the law governing a director's right to board information, Vice Chancellor Laster concluded that Kalisman was entitled to the documents that predated the board's formation of a special committee excluding Kalisman. The court explained the generally accepted throughline of information sharing between a director and the director's designating stockholder as follows: "When a director serves as the designee of a stockholder on the board, and when it is understood that the director acts as the stockholder's representative, then the stockholder is generally entitled to the same information as the director." *Id*. at *6. The court, however, did not reach the issue of whether OTK was entitled to the same information being provided to Kalisman because Kalisman had "undertaken not to share privileged information with OTK." *Id*.

In *CBS*, Chancellor Bouchard held that a corporation could not withhold privileged information from its controlling stockholder (National Amusements, Inc. or "NAI") and the controller's affiliated directors. 2018 WL 3414163. The court held that the directors affiliated with NAI were entitled to all privileged communications provided to the CBS board, other than those provided exclusively to the special committees. Additionally, the court concluded that the controller and its affiliates were entitled to the same information as the NAI-affiliated directors, reasoning that:

> Given that Ms. Redstone is one of the NAI Affiliated Directors (as well as one of the NAI Parties) and, by all accounts, is the key decision-maker for NAI, it is simply not realistic or practical to believe that any information to which she may become privy as a result of this ruling could be segregated from her thought process as an adversary of CBS in this case.

*Id.* at *7.

Most recently, in *Hyde Park*, two venture capital funds (the "Funds") that owned preferred stock in FairXchange, Inc. ("FairX") held, with the other holders of preferred stock, a contractual right to designate a director to the FairX board of directors. 292 A.3d 178. The preferred stockholders designated Ira Weiss, a partner in the venture capital firm that sponsored the Funds. Weiss also managed the Funds. During Weiss's tenure on the board, FairX received an acquisition proposal. Weiss advocated for a different approach to the offer than the other two members of the FairX board. Weiss was then removed by the other preferred stockholders. After Weiss's removal, the company was acquired in a merger, and the Funds sought appraisal of their stock. In discovery, the Funds sought privileged information generated while Weiss served as a FairX director. In a comprehensive analysis of our caselaw on joint-client privilege and its application to directors and stockholders, Vice Chancellor Laster held that the funds were entitled to all of the information to which Weiss was entitled while he served as a director, reasoning that:

> Weiss served on the Board as a representative of the Funds [and] necessarily shared information in light of his dual roles as director and fund manager. Having only one brain, Weiss could not avoid sharing information. The Funds were therefore inside the circle of confidentiality as well.

*Id.* at 196.

The caselaw discussed above establishes that a director may share privileged or confidential company information with a stockholder if (1) the director is designated to the board by the stockholder pursuant to contract or the stockholder's voting power; or (2) if the director also serves in a controlling or fiduciary capacity with the stockholder. *See, e.g.*, *Hyde Park*, 292 A.3d at 183, 185 (allowing discovery of privileged information where the plaintiffs' contractually designated director was a manager of the plaintiffs and a partner of their sponsor); *CBS*, 2018 WL 3414163, at *7 (granting motion to compel privileged information where one of the directors who was entitled to privileged information was also the key decision maker for the corporation's litigation counterparty and controlling stockholder, which had moved to compel that information); *AOC*, 1992 WL 97220, at *1 (allowing stockholder to access privileged information where the designated directors were partners of and indirectly owned 100% of the designating stockholder); *Kortum*, 769 A.2d at 121 (allowing a 50% stockholder that had the right to designate a director to inspect records demanded by its dual-fiduciary designee); *Moore Bus. Forms*, 1996 WL

307444, at *4 (granting stockholder with the contractual right to designate a director access to company information to the same extent as its director designee); *KLM*, 1997 WL 525861, at *1 (allowing stockholder to access privileged information because the stockholder had a contractual right to designate a director).[37]

The facts of this case do not fit the paradigm of the cases discussed above. First, Plaintiffs do not have a contractual right to appoint a director and, owning less than two percent of Illumina's outstanding stock, they did not control the vote during Teno's election. Second, Teno does not serve in a fiduciary role for any of the Plaintiffs. Thus, this case does not present the concern that the director is a dual-fiduciary. *See CBS*, 2018 WL 3414163, at *7 (observing that "it is simply not realistic or practical to believe that any information to which [a director] may become privy as a result of [her director status] could be segregated from her thought process" in her other capacity); *Hyde Park*, 292 A.3d at 196 ("Having only one brain,

---

[37] Although it is not discernable from the opinion discussed above or the related opinion in *KLM Royal Dutch Airlines v. Checchi*, 698 A.2d 380 (Del. Ch. 1997), it appears that the KLM director designees on the Northwest board were also fiduciaries of KLM. The Northwest 1994 Annual Report identifies KLM's president, Pieter Bouw, managing director, Leo van Wijk, and chief financial officer, Rob Abrahamsen, as members of the Northwest board. *See Northwest Airlines Corporation 1994 Annual Report* 61 (Feb. 17, 1995), https://dlg.galileo.usg.edu/data/delta/nwa-ar/pdfs/delta_nwa-ar_nwa-ar-1994.pdf. A 1996 *New York Times* news article reported on the resignations of those three members from the Northwest board. *See Company News;3 KLM Executives Resigning from Northwest Air Board*, N.Y. Times, Feb. 24, 1996 (§1), at 35.

Weiss [a director and manager of plaintiffs] could not avoid sharing information."); *In re Dole Food Co., Inc. S'holder Litig.*, 2015 WL 5052214, at *43 (Del. Ch. Aug. 27, 2015) (stating that it was not a *per se* breach of fiduciary duty for "a human being with only one brain," to share that information "with himself in his stockholder capacity" and with his personal advisers in that capacity); *see also* Laster & Zeberkiewicz at 55 (recognizing that a bright-line rule against dual-fiduciary directors' sharing information with their designating stockholder risks fiduciary breaches at two levels: "first at the corporate level by preventing the director representatives from engaging in behavior that is currently a normal part of the investment and monitoring process, and second at the fund level by preventing the director who was a fund fiduciary from sharing information that was material to the fund").

Plaintiffs' contention that their relationship with Teno grants them access to Illumina's privileged information lacks support under either recognized path of acceptable information sharing. First, Teno's employment relationship with Plaintiffs is readily distinguishable from the "one brain" cases. In the "one brain" cases, the director controlled or served in a fiduciary capacity with the stockholder seeking the information and, therefore, was unable to split their brain between their position as a director and their position controlling or as a fiduciary to the entity

seeking information. *See Hyde Park*, 292 A.3d at 183 ("While serving as a director, Weiss also managed the funds."); *AOC*, 1992 WL 97220, at *1 ("Plaintiff, in effect, is a member of Clark Oil's board since its two constituents are members of its board."); *CBS*, 2018 WL 3414163, at *7 ("Ms. Redstone is one of the NAI Affiliated Directors (as well as one of the NAI Parties) and, by all accounts, is the key decision-maker for NAI . . . ."). Plaintiffs do not argue that Teno exercises influence over any of them, instead consistently referring to their relationship as that of an employee and employer.[38] Second, as an undisputed factual matter, Plaintiffs did not designate Teno to the Company's board of directors pursuant to the type of contractual right present in any of the designated-director cases.

Plaintiffs, citing the recent *Hyde Park* decision, contend that the combination of their having nominated Teno and his employment relationship with another Icahn-controlled entity negates any reasonable expectation of confidentiality between the Plaintiffs and the Company. Implicit in Plaintiffs' argument is the suggestion that *Hyde Park* expanded the circumstances under which a director could share

---

[38] *See, e.g.*, Pls.' Opp'n Br. 30 (arguing that Defendants failed to substantiate "a tension between [Teno's fiduciary duties as a director] and the duties that Mr. Teno owes simultaneously to his employer and its investors"). Plaintiffs cite no caselaw establishing fiduciary duties arising from a director's ordinary employment by a third-party that override the fiduciary duties that a director owes to the corporation on whose board he serves.

confidential and privileged information with stockholders. The Defendants argue it did not.

*Hyde Park* synthesized the accepted bases for information sharing into a conceptual framework that looks to whether there is a "sufficient expectation of confidentiality" on the part of the corporation to deny information sharing between the director and the stockholder. 292 A.3d at 194–95. *Hyde Park* did not expand the limited circumstances in which a stockholder falls within the circle of confidentiality. *Id.* at 188–96. Throughout the opinion, the court highlighted and consistently adhered to the more than three decades of precedent on which it relies. Indeed, in pointing to Chancellor Bouchard's decision in *CBS*, Vice Chancellor Laster highlighted the precise ways in which the ruling followed the cases that preceded it:

> *Following precedent*, Chancellor Bouchard held that the controlling stockholder could receive the same discovery as its director designees, noting that one of the director designees controlled the controlling stockholder . . . . In other words, she only had one brain, and she could not avoid sharing information with the entity she controlled, *which was permissible under the weight of precedent*.

*Hyde Park*, 292 A.3d at 194 (emphasis added).

*Hyde Park* itself expressly grounded its decision in well-established caselaw. The court concluded that that the plaintiff funds were within the circle of

confidentiality because their director designee also controlled the funds, a determination that did not signal an expansion of precedent:

> Under *AOC*, *Moore Business Forms*, *Kalisman*, and *CBS*, Weiss had the right to share information with the Funds, and he necessarily shared information in light of his dual roles as director and fund manager. Having only one brain, Weiss could not avoid sharing information. The Funds were therefore inside the circle of confidentiality as well.

*Hyde Park*, 292 A.3d at 196. *Hyde Park* did not change the law; it reframed and clarified a "framework [that] has been settled law in Delaware for nearly four decades." *Id.* at 194–95.[39]

Under *Moore Business Forms* and its progeny, a director may share certain confidential board information with a designating stockholder who has a contractual right to designate the director or where the director serves in a fiduciary capacity with the stockholder.[40] That is not to say that there are not other situations in which

---

[39] Plaintiffs' reliance on *Aerojet*, is misplaced. 2022 WL 1446782. *Aerojet* presented "an unusual question" of privilege involving two equally divided board factions that were deadlocked and engaged in a proxy contest against each other. *Id.* at *1. One side sought to invoke the corporation's privilege against the other. The court held that it could not. *Aerojet* did not address whether the board faction could share privileged information with its nominating stockholder. Furthermore, unlike in this case, one of the director plaintiffs in *Aerojet* also served as the executive chairman of the stockholder's general partner, thus presenting the dual-fiduciary issue highlighted in cases such as *CBS*, *Kortum*, and *Hyde Park*. *Aerojet* supports the proposition that Teno is entitled to privileged Illumina information, but it does not address what he may do with that information.

[40] The director's sharing information with the designating stockholder does not give the stockholder freedom to further disseminate the company's confidential information. *See* Laster & Zeberkiewicz at 56–57 ("[T]he ability of a blockholder director to convey

information sharing might be permissible. But, under the circumstances presented in this case, the mere fact that Teno was nominated by the Plaintiffs and is an employee of another Icahn-affiliated entity does not persuade the court that Teno had the right to disclose Illumina's confidential and privileged information to the Plaintiffs. Nor is it reasonable for Teno to have believed that he could share the Company's privileged information with Plaintiffs, given his agreement to abide by the Company's Code of Conduct, which provides that he "may not use or give to others . . . confidential information of the Company."[41] Accordingly, Plaintiffs have

---

information to the stockholder that placed him on the board does not mean that the fund or investor obtains the unfettered right to use the information in whatever manner it sees fit. . . . In other words, the director can share with his stockholder affiliate, but the ability to share within the silo does not permit sharing outside of the silo.").

[41] Pls.' Opp'n Br. 32 (internal quotation marks omitted). To avoid Teno's agreement to maintain confidentiality, Plaintiffs proffer several unpersuasive arguments. First, they contend that the Company had a reasonable expectation that Teno would share privileged information with Plaintiffs or Icahn because the Company communicated with Teno using Teno's email account "@icahncap.com" and, therefore, confidential information was provided "to Plaintiffs' electronic communication network." Pls.' Opp'n Br. 14. But there is no assertion that the Challenged Information was provided to Teno via email. Teno accessed it via a Board portal. Illumina's Reply Br. 19. The fact that Teno received login information to the Board portal at his @icahncap.com email address does not diminish the Company's expectation of confidentiality as to information accessible through the portal. Dkt. 33 ¶ 9 ("Teno Decl."). The portal contained a notice from Illumina's general counsel that "[e]verything provided herein is confidential" and that "[e]ven within the company, this information should not be communicated outside of senior management, the board and our counsel." Dkt. 25 Ex. C ¶ 7 ("Orsini Decl."); *id.* Ex. 1. Teno's assertion that he was, nevertheless, not aware of such expectations because he stated to one director at a board dinner that he told Icahn "the important stuff" and was not subsequently dissuaded is unpersuasive—particularly because the notices reinforcing his confidentiality obligation

not established that they are within the circle of confidentiality that would permit

Teno to share with them Illumina's privileged information.[42]

### C. Striking Is Warranted

As a remedy for Teno's unauthorized dissemination of the Company's

privileged information and Plaintiffs' unauthorized use thereof, Defendants request

an order striking the Challenged Information from the complaint. Court of Chancery

Rule 12(f) provides:

---

were added shortly after the dinner. Teno Decl. ¶ 10; Orsini Decl. ¶ 7. Second, Teno's assertion that he never executed an agreement not to share information is undermined by his executed board questionnaire, wherein he agreed to comply with the Company's Code of Conduct, which prohibited the sharing of confidential information. *See* Teno Decl. Ex. 1 at 58 (agreeing "in [his] individual capacity and on behalf of any person or entity on whose behalf my nomination is being made" to "comply[] with applicable law and all applicable corporate governance, code of conduct and ethics, . . . confidentiality and stock ownership and trading policies and guidelines of the corporation"); *see also* Dkt. 34 Ex. C (Illumina Bylaws § 2.13) (requiring a director nominee, if elected, to agree "in such nominee's individual capacity and on behalf of any person or entity on whose behalf the nomination is being made . . . [that] if elected [the nominee] will comply[] with applicable corporate governance, code of conduct and ethics, . . . confidentiality and stock ownership and trading policies and guidelines of the corporation"). Finally, Teno asserts that "the first time I heard Illumina's position that I should not share information with Icahn was after this lawsuit was filed." Teno Decl. ¶ 10. The documents cited above make that assertion entirely untenable.

[42] It seems likely that most activist investors would strongly support remaining outside of the circle of confidentiality given the trading restrictions that accompany this kind of information access. *See* Laster & Zeberkiewicz at 57 ("Given the affiliation between the blockholder director and the stockholder and the understanding that information will flow from the blockholder director to the stockholder, the stockholder will be treated as a constructive insider for the purpose of the common law limitations on insider trading.") (citing *Brophy v. Cities Serv. Co.*, 70 A.2d 5 (Del. Ch. 1949)).

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these Rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the Court's own initiative at any time, the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Ct. Ch. R. 12(f).

Plaintiffs oppose the motion on the grounds that the Challenged Information is neither redundant, immaterial, impertinent, or scandalous. Plaintiffs also argue that the information is adequately protected because it is contained in a confidential filing covered by Court of Chancery Rule 5.1.

Admittedly, the Challenged Information does not neatly fit into the four categories that permit the court to strike information from a pleading under Rule 12(f). The Defendants implicitly agree, as they do not attempt to classify the Challenged Information as being redundant, immaterial, impertinent, or scandalous. Rather, they rely heavily on public policies that support protection of privileged communications and confidential information.

Vice Chancellor Slights's discussion of this issue in *KT4 Partners LLC v. Palantir Technologies Inc.*, is instructive, and indicates that the court's power to strike information from a pleading or other filing is not limited to a strict application of the rule:

> [M]otions to strike, because of the standards, tend to get folks fired up. Rule 12(f) talks about striking "redundant, immaterial, impertinent, or scandalous material." That standard is helpful as far as it goes, but what the defendant here is arguing is not really any of those things *per se* but, instead, saying that there is a Court order in place that restricts use of certain information and that the plaintiff here has used that information in a manner that is contrary to the Court's order.

C.A. No. 2018-0596-JRS, at 15:22–16:8 (Del. Ch. Dec. 4, 2018) (TRANSCRIPT). Vice Chancellor Slights went on to grant the motion to strike information from a complaint that exceeded the scope of a prior order of the court in a books and records action. *Id.* at 19:21–22.

Defendants point to *NewYork.com Internet Holdings, Inc. v. Entertainment Benefits Group, LLC*, where this court granted a Rule 12(f) motion to strike a paragraph from a pleading that disclosed information from a confidential mediation conference. 2015 WL 4126653, at *4–5 (Del. Ch. July 8, 2015); *see also Khanna v. McMinn*, 2006 WL 1388744, at *37–39 (Del. Ch. May 9, 2006) (considering whether to strike allegedly privileged information from a complaint but declining to do so because the information was not privileged). Defendants also rely on former Chief Justice, then-Chancellor, Strine's transcript ruling and order in *Indiana Electrical Workers Pension Trust Fund IBEW v. Wal-Mart Stores, Inc.*, where he granted a motion to strike information from a brief that was derived from material delivered anonymously to plaintiffs' counsel. C.A. No. 7779-CS (Del. Ch. May 16,

2013) ("*Wal-Mart*") (TRANSCRIPT), *aff'd*, 95 A.3d 1264 (Del. 2014). The Chancellor reasoned that the plaintiffs were not entitled to have that information and, therefore, could not rely on it, even if the anonymous whistleblower "may have been acting in subjective good faith." *Id.* at 76:23. The court viewed the issue as one of fairness: "So I don't think of this as an issue of privilege, really. I look at it as if you have someone else's stuff and you shouldn't have that, then you got to give it back. . . . So I'm requiring those [documents] to be given back, and I'm requiring the references to those to be stricken." *Id*. at 77:23–78:7. In affirming the Chancellor, the Delaware Supreme Court concluded that the "Court of Chancery properly discharged its equitable discretion in crafting a remedy." *Wal-Mart Stores, Inc. v. Indiana Elec. Workers Pension Tr. Fund IBEW*, 95 A.3d 1264, 1282 (Del. 2014).[43]

---

[43] Defendants also persuasively argue that Teno should not be permitted to circumvent the well-established precedent which holds that a director lacks standing to assert derivative claims on behalf of the corporation. *See Schoon v. Smith*, 953 A.2d 196 (Del. 2008). In *Schoon*, the Delaware Supreme Court rejected a director's argument that he should be permitted to sue derivatively on behalf of a privately held company because, as a director, he was "in a better position to know and to make his allegations against the board without waiting for a stockholder to do so." *Id*. at 208. The Court noted that depriving the director of standing did not prevent a failure of justice because the stockholder that directly elected him had already made a books and records demand, utilizing "the tools at hand" to frame a derivative complaint. *Id*. at 208–09. So too, here. Plaintiffs delivered a books and records demand to obtain information to support their derivative claims. Teno may not effectively permit Plaintiffs to end-run the Section 220 process by providing privileged information to Plaintiffs for a derivative suit in this case. To be sure, this ruling should not

Plaintiffs distinguish these cases, noting that the decision in *Wal-Mart* did not involve a pleading, and *NewYork.com* involved confidential information that was subject to a mediation agreement which stated that all information provided during the mediation would be inadmissible in any litigation. These distinctions are unpersuasive.[44] The caselaw demonstrates that this court has broad power to protect

---

be construed as prohibiting a director from violating attorney-client privilege under any possible circumstances. *See* Laster & Zeberkiewicz at 53 (raising the hypothetical of a director becoming aware of potential criminal conduct at the corporation and feeling compelled to contact law enforcement). There are also professional rules that govern a lawyer's ability to disclose confidential client information in certain circumstances. *See* Del. Lawyers' R. Prof'l Conduct 1.6(b).

[44] Plaintiffs also cite *Dole,* 2015 WL 5052214, and *Kerbawy v. McDonnell*, 2015 WL 4929198 (Del. Ch. Aug. 18, 2015), for the proposition that it is not inherently wrongful for a director to share confidential information with third parties. Pls.' Opp'n Br. 36–37. Neither case involved a motion to strike.

In *Dole*, the plaintiffs brought an aiding and abetting claim against the CEO's financial adviser for using confidential information that the CEO shared with the adviser to prepare a takeover bid. The court found that it was not a *per se* breach of fiduciary duty for "a human being with only one brain" to share that information "with himself in his stockholder capacity" and with his personal advisers in that capacity. *Dole*, 2015 WL 5052214, at *43. That decision is entirely consistent with *Moore Business Forms* and its progeny.

In *Kerbawy*, a Section 225 action, the plaintiff sought to invalidate written consents on the grounds that they were solicited using improperly shared confidential information. 2015 WL 4929198. *Kerbawy* presented starkly different facts than the case at bar—there, "the documents and information at issue were fairly unremarkable corporate documents," "the [privately held company's] Board itself often shared with the stockholders information that it considered confidential or privileged," and the movants could not "point convincingly to any harm to ACell as a result of Kerbawy obtaining the Company information and documents." *Id.* at *21. By contrast, it is undisputed that the information that Teno shared was privileged and confidential. In addition, the Company took measures to protect its

confidential information and to formulate an appropriate remedy in the event confidential or privileged information is improperly interjected into litigation. This approach is also supported by decisions from federal courts applying the federal counterpart to Rule 12(f).[45] *See, e.g.*, *Ward v. CommScope, Inc.*, 2021 WL 1297849, at *4 (S.D. Cal. Apr. 6, 2021) ("Courts have utilized Rule 12(f) to strike sections of a pleading that include inadmissible or privileged information.") (internal quotation marks omitted); *O'Donnell v. Genzyme Corp.*, 2014 WL 12953767, at *7 (N.D. Ohio Dec. 18, 2014) (striking privileged information from a complaint under Rule 12(f)); *Sims v. Roux Lab'ys, Inc.*, 2007 WL 2571941, at *1–4 (E.D. La. Aug. 31, 2007) (same); *Hensley v. City of Port Hueneme*, 2018 WL 5903963, at *2–3 (C.D. Cal. Mar. 21, 2018) (same).

---

confidential information, and Teno's sharing of this information violated Teno's agreement to keep the information confidential.

[45] Where, as here, a Federal Rule of Civil Procedure closely tracks a Delaware court's rules, cases applying the federal rule are persuasive in applying the Delaware court's rules. *See Crumplar v. Superior Ct. ex rel. New Castle Cnty.*, 56 A.3d 1000, 1007 (Del. 2012) (observing that an interpretation of a Federal Rule of Civil Procedure that closely tracks a Delaware rule "provide[s] persuasive guidance" in interpreting the Delaware rule); *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1286 (Del. 2007) ("Where, as here, the Superior Court's Rules of Civil Procedure closely track the Federal Rules of Civil Procedure, cases interpreting the federal rules are persuasive authority for our construction purposes.").

Finally, Plaintiffs argue that there is no harm because the complaint was filed confidentially under Court of Chancery Rule 5.1.[46] That argument is without merit. The purpose of the motion to strike is to prevent Plaintiffs from utilizing privileged information to which they are not entitled. The fact that the public is not able to access that information does not remedy Teno's unauthorized dissemination of Illumina's privileged and confidential information or Plaintiffs' unauthorized use of it. To repeat the words of our former Chief Justice in similar circumstances: "[I]f you have someone else's stuff and you shouldn't have that, then you [have] got to give it back" and may not use it for any purpose. *Wal-Mart*, C.A. No. 7779-CS, at 77:24–78:2.

## III.  CONCLUSION

For the foregoing reasons, the Motion to Strike is GRANTED.

IT IS SO ORDERED.

---

[46] Pls.' Opp'n Br. 4 (arguing that "Rule 5.1 provides the mechanism for addressing [Defendants'] concerns"); *id.* at 17 (arguing that, by filing the complaint in compliance with Rule 5.1, "Plaintiffs protected and preserved the Company's ability to assert and maintain the privilege or any other viable confidentiality interests over these materials"); *id.* at 35–36 (identifying that the purpose of Rule 5.1 is "to preserve confidentiality in judicial filings where it is necessary and appropriate to do so" and quoting a list of categories of information appropriately protected by Rule 5.1—a list which does *not* include privileged information).

Very truly yours,

*/s/ Paul A. Fioravanti, Jr.*

Vice Chancellor


PAF/dtw


cc:    All counsel of record (by *File & ServeXpress*)